**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOHN MASTRIO,                      :
      Plaintiff,            :       CIVIL ACTION NO.
                              :       3:13-cv-00564 (VLB)
v.                              :
                              :
EUREST SERVICES, INC.       :       March 4, 2014
      Defendant.         :

**MEMORANDUM OF DECISION GRANTING**
**DEFENDANT'S MOTION TO DISMISS [Dkt. #11]**

**I.      Introduction**

The Plaintiff, John Mastrio, a resident of Newington, Connecticut, brings this action against Eurest Services, Inc. ("Eurest Services"), an entity incorporated in Delaware with its principal place of business in Wayne, Pennsylvania, for monetary damages and injunctive relief under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Family and Medical Leave Act 42 U.S.C. § 2611, *et seq.* ("FMLA"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a)(1) ("CFEPA"). The Defendant moved to dismiss the ADA and CFEPA claims, Counts 1 and 3 respectively, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted and for lack of subject matter jurisdiction. For the following reasons, the Defendant's Motion to Dismiss is GRANTED.

1

## II.     Background

The following allegations are taken from the Complaint [Dkt. #1, Complaint].  Mastrio began working as a chef manager for Eurest Services in July 2010.  [Dkt. #1, ¶¶ 11-12].  On August 7, 2011, Mastrio was rushed to the hospital emergency room and was admitted to the hospital the following day for kidney stones.  [*Id.* at ¶¶ 13, 15-16].  When he first went to the hospital, the Plaintiff telephoned his immediate supervisor, Patty Ouellette, to notify her of the situation and left her three messages.  [*Id.* at ¶ 14].  On August 8, 2011, the date the Plaintiff was admitted to the hospital, he spoke with Ouellette, and the first comment that Ouellette made was "did you pass that damn stone?"  [*Id.* at ¶ 17].  On August 9, 2011, the Plaintiff underwent a painful surgery for the kidney stones which included the insertion of a stent.  [[*Id.* at ¶ 18].  Accordingly, the Plaintiff took medical leave through September 7, 2011.  [*Id.* at ¶ 21].

Around August 10, 2011, the Plaintiff telephoned Ouellette to notify her that he was recovering at home and would be unable to return to work.  [*Id.* at ¶ 22].  Despite the Plaintiff's explanation, Ouellette allegedly asked the Plaintiff "can you come in to do your inventory?"  [*Id.* at ¶ 23].  The Plaintiff responded that he could not leave his bedroom or his bathroom for more than five minutes, to which Ouellette said, "I am not happy about this John."  [*Id.* at ¶¶ 24-25].  On August 11, 2011, the Plaintiff was directed by his physician to go to the emergency room because Mastrio was experiencing leg swelling and could barely walk.  [*Id.* at ¶ 26].  Around August 15, 2011, the Plaintiff underwent kidney stone blasting.  [*Id.*

2

at ¶ 27].  While he was on medical leave, Ouellette asked the Plaintiff's wife "did he deliver that baby yet?"  [*Id.* at ¶ 28].  Around September 7, 2011, the Plaintiff returned to work, but on November 3, 2011 he was terminated.  [*Id.* at ¶¶ 29-30].

During the termination process, Ouellette told the Plaintiff that he "did not put enough time in" and that he "took too much time off."  [*Id.* at ¶ 32].  Importantly, the Plaintiff did not allege any health-related issues or impairments to daily activities after September 7, 2011.

The Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on January 24, 2012, and received the right to sue letter on April 18, 2013.  [*Id.* at ¶¶ 37-38].  He also filed charges with the Commission on Human Rights and Opportunities ("CHRO") on January 24, 2012, and received a release of jurisdiction on January 31, 2013.  [*Id.* at ¶¶ 39-40].

III.    Legal Standard

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations omitted).  "Where a complaint pleads facts that

3

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citations and internal quotation marks omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal,* 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal,* 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal,* 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference."  *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or

4

of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### A.  Whether the Plaintiff Is Disabled under the ADA

The Defendant first argues that the Plaintiff was not "disabled" under the ADA because his kidney stones only created a temporary disability and, therefore, did not substantially limit a major life activity.  [Dkt. #11, Motion to Dismiss, p. 2-3].  The Plaintiff argues that after the 2008 amendments to the ADA, disabilities no longer need to be permanent as long as they do inhibit, as they did here, a major life activity.  [Dkt. #14, Plaintiff's Objection to Defendant's Motion to Dismiss, p. 6-9].

Under the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  "In order to state a claim for violation of Title III . . . a plaintiff must 'establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.'"  *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012) (citing *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)).  "To establish a disability, plaintiff must (1) show that [he]

5

suffers from a physical or mental impairment, (2) identify the activity claimed to be impaired and establish that it constitutes a major life activity, and (3) show that [his] impairment substantially limits the major life activity previously identified." *Green v. DGG Props. Co., Inc.*, No. 3:11-cv-01989(VLB), 2013 WL 395484, at *9 (D. Conn. Jan. 31, 2013) (internal quotation marks omitted) (quoting *Kravtsov v. Town of Greenburgh*, No. 10-cv-3142(CS), 2012 WL 2719663, at *10 (S.D.N.Y. July 9, 2012).  Since the Plaintiff's claim arises after January 1, 2009, the ADA Amendment Act of 2008 ("ADAAA") governs this analysis.  The ADAAA "substantially broadened the definition of a disability under the law, in explicit response to *Sutton v. United Air Lines*, 527 U.S. 471 (1999) and *Toyota Motor Mfg. v. Williams*, 534 U.S. 184 (2002), in which the ADA's terms defining disability had been strictly defined."  *Hutchinson v. Ecolab, Inc.*, No. 3:09-cv-1848(JBA), 2011 WL 4542957, at *7 (D. Conn. Sept. 28, 2011).

Under the ADAAA, the definition of "disability" is construed in "favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). "Disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individuals; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "The ADAAA expanded the interpretation of the ADA's three-category definition of 'disability.'  For example, 'major life activity' includes 'caring for oneself, performing manual tasks ... walking, standing, lifting, bending, speaking, breathing.., and working,' as well as 'the operation of a major bodily function,'

6

including 'neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.'" *Hutchinson*, 2011 WL 4542957, at *8 (quoting Pub.L. No. 110–325, 122 Stat. 3553, 3555 (2008)).

Even though EEOC regulations implementing the ADAAA have no binding effect on this Court, they are "useful to understanding the intended meaning of the Amendments." *Hutchinson*, 2011 WL 4542957, at *8 n. 6.  The EEOC regulations provide that under the ADAAA an impairment is a disability under the ADA when "it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii).  The regulations further provide that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii).  Furthermore, even under the broadest definition of disability, short term or temporary impairments generally do still not render a person disabled within the meaning of the statute.  EEOC guidance explains that  the "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section," however "[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." 29 C.F.R. pt. 1630, Appx. (internal quotation marks and citations omitted).  This Court, and indeed

7

several other courts in this Circuit, have still adhered to the traditional notion that temporary or short term disabilities are not covered by the statute absent allegations highlighting the extreme severity of the disability.  *See Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 198-99 (D. Conn. 2013) ("The court notes that the Second Circuit has determined that, "A 'temporary impairment' lasting only a few months is, 'by itself, too short in duration . . . to be substantially limiting.'" *De La Rosa v. Potter*, 427 Fed. Appx. 28, 29 (2d Cir.2011) (quoting *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316–17 (2d Cir.1999)). While this Circuit has explicitly deferred consideration of whether a temporary impairment is per se unprotected under the ADA . . . , this Circuit has stated that an impairment of seven months, by itself, was too short to qualify as a disability. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir.1998) (superseded by statute on other grounds)."); *Green*, 2013 WL at *10 ("It appears that even under the ADAAA's broadened definition of disability, short term impairments would still not render a person disabled within the meaning of the statute."); *Turner v. Eastconn Reg'l Educ. Serv.*, No. 3:12-cv-00788(VLB), 2013 WL 6230092, at *6 (Dec. 2, 2013) (stating the same); *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 211 (D. Conn. 2012) (stating the same); *Holt v. Crossmark/Sam's Club*, No. 13-cv-6142T, 2013 WL 3282886, at *3 (W.D.N.Y. June 27, 2013) ("There is no allegation in the Complaint of the nature of plaintiff's alleged disability, or any indication that the disability is one which would severely impair, on a permanent or long term basis, participating in a major life activity.").

8

Here, the Plaintiff alleges that he was required to miss work for approximately one month while he underwent treatment for his kidney stones. During that time, he was restricted to his bedroom and could not be removed from that space for more than five minutes, and he suffered excruciating pain. There is no doubt that during that month the Plaintiff demonstrated "a physical or mental impairment that substantially limits one or more major life activities" because he could not go to work or even walk around.  42 U.S.C. § 12102(1). However, after September 6, 2011, the Plaintiff returned to work and, as far as the allegations in the Complaint are concerned, never again experienced problems related to his kidney stones.  It appears that the Plaintiff returned to work freely and without restrictions from his doctor and, therefore, could perform all of his job functions.  At that point, there were no more limitations on any major life activities.

In *Rosario v. Western Reg'l Off Track Betting*, the court held that a plaintiff was not disabled under the ADA when he suffered from cancer, but returned to work after the completion of his treatment and was able to work without restriction.  *Rosario v. Western Reg'l Off Track Betting*, No. 08-cv-6546T, 2013 WL 4094510, at *9 (W.D.N.Y. Aug. 13, 2013).  Similarly, in *Palmieri*, the court held that a plaintiff failed to prove he was disabled under the statute because the back injury that caused a substantial limitation on his ability to work "had been resolved, and the parties [did] not dispute that he can work once again." *Palmieri*, 947 F. Supp. 2d at 199.

Just as in those cases, the Plaintiff here may have suffered a short-term impairment caused by his kidney stones.  However, after receiving treatment, no further limitations on any substantial life activities remained.  Furthermore, there are no allegations in the Complaint showing that the Plaintiff's kidney stones are either episodic or chronic in nature such that potential instances of future outbreaks are possible.

The Plaintiff rests his entire argument on a case from the Southern District of Ohio.  In that case, the court, without much explanation, found that the plaintiff's assertion of being disabled under the ADA due to kidney stones was sufficient at the pleading stage.  *Esparza v. Pierre Foods*, No. 1:11-cv-874, 875-HJW, 2013 WL 550671, *6 (S.D. Ohio Feb. 12, 2013).  In that complaint, however, the plaintiff alleged that his kidney stones caused him to "request off work numerous times due to the pain caused by his physical impairment and to attend medical treatment for his kidney stones."  *Esparza v. Pierre Foods*, No. 1:11-cv-874, 875-HJW, Dkt. #19, ¶ 201.  Furthermore, that complaint not only alleged a claim for employment discrimination, but also "retailiat[ion]" against the plaintiff's exercise of his rights under the ADA.  *Id.* at ¶ 208.  Here, the Complaint does not allege that the kidney stones were anything but a singular occurrence, and the Plaintiff has not brought a claim for retaliation under the ADA, but for discrimination.

This matter is more similar to *Clay v. Campbell Cnty. Sheriff's Office*, No. 6:12-cv-00062, 2013 WL 3245153, at *2-3 (W.D. Va. June 26, 2013).  In that case,

the plaintiff's ADA discrimination claim was dismissed because the plaintiff "suffered from a temporary, one-time" bout of kidney stones that was "resolved within two weeks." *Id.* He was not, therefore, disabled under the statute. *Id.* I agree with that court that if the ADA was meant to protect any individual who suffers some impairment substantially limiting an important life activity, regardless of the length of the impairment, "anyone who became ill and had to miss work for a period of time would suffer from a 'disability' under the ADA." *Id.* That result is not plausible because disability must mean something more than a mere illness. Here, the Plaintiff suffered a limitation on several major life activities while he was recovering from his kidney stone operation. After that, he has not alleged any continued impairments, and, therefore, has not sufficiently alleged a disability under the ADA. The ADA discrimination claim in Count One is DISMISSED.

### B. Whether the Plaintiff's CFEPA Claim is Barred by the Statute of Limitations

The Defendant moves to dismiss the Plaintiff's CFEPA claim because the Plaintiff failed to comply with the Connecticut statute of limitations governing commencing litigation. [Dkt. #11, p. 4-6]. In particular, the Defendant argues that the Plaintiff had ninety days to commence litigation after receipt of the release from jurisdiction notice from the CHRO, and commencing litigation in Connecticut requires service on the Defendant. [*Id.*]. Since the Plaintiff failed to serve the Defendant within ninety days of receiving the release of jurisdiction notice, the claim is barred. [*Id.*]. The Plaintiff argues that the Federal Rules of

11

Civil Procedure apply, not the Connecticut statute, so the litigation was commenced in a timely manner because a complaint was filed in federal court within ninety days of receiving the CHRO's release.  [Dkt. #14, p. 10-12].

The issue here is the proper date that the litigation commenced. Connecticut law provides that "any action brought by the complainant in accordance with [CFEPA] shall be brought within ninety days of receipt of the release from the commission."  Conn Gen. Stat. § 46a-10(e).  Failure to bring an action within ninety days results in dismissal of the claim.  *White v. Dep't of Children & Families*, 51 A3d 1116, 1121 (Conn. App. 2012) (holding that failure to bring CFEPA action within ninety days of release of jurisdiction warranted dismissal of claim), *cert. denied*, 53 A.3d 221 (Conn. 2012); *Calderon v. Dinan & Dinan, P.C.*, No. 3:05-cv-1341, 2006 WL 1646157, at *3 (D. Conn. Jun3 13, 2006) (dismissing CFEPA claim for failure to bring action within ninety days of release of jurisdiction).

Also under Connecticut law, "[i]t is axiomatic that 'an action is brought on the date on which the writ is served on a defendant."  *John H. Kolb & Sons, Inc. v. G & L Excavating, Inc.*, 821 A.2d 774, n.5 (Conn. App. 2003) (quoting *Raynor v. Hickock Realty Corp.*, 763 A.2d 54, 56 (Conn. App. 2000); *see also Converse v. General Motors Corp.*, 893 F.2d 513, 515-16 (2d Cir. 1990) (noting that the *Erie* doctrine applies to statutes of limitations questions when diversity is the basis for jurisdiction and that "the Connecticut Supreme Court has long adhered to the

12

rule that only actual service upon the defendant will satisfy the state statutes of limitations").

Here, Mastrio received the release of jurisdiction from the CHRO on January 31, 2013.  [Dkt. #1, ¶ 40].  According to Connecticut law, the Plaintiff was required to serve the Defendant on or before May 1, 2013.  The Plaintiff filed his Complaint with this Court on April 19, 2013, but did not serve his Complaint on the Defendant at that time.  Instead, the Plaintiff mailed the waiver of service on May 22, 2013, and Eurest Services returned the executed waiver on June 26, 2013. [Dkt. #10, Waiver of Service Returned Executed as to Eurest Services, Inc.]. Therefore, the Defendant was not served until after ninety days of receiving the release, rendering the CFEPA claim untimely.

The Plaintiff argues that the Connecticut ninety day statute of limitations is procedural and does not apply; instead, he argues that the Federal Rule of Civil Procedure should govern, meaning that the action commenced on the date the Complaint was filed.  The United States Supreme Court has squarely rejected this argument.  In *Walker v. Armco Steel Corp.*, the Court held that a state law claim that would be barred in state court by operation of state law should similarly be precluded from being brought in federal court.  *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980).  All of the cases the Plaintiff cites as authority for his position were rendered before *Walker*.

Moreover, courts in this Circuit often apply the state statute of limitations to the state law claims when exercising supplemental jurisdiction, including

claims for CFEPA violations.  *See Shlafer v. Wacknut Corp.*, 837 F. Supp. 2d 20, 24 (D. Conn. 2011) ("As the Court is exercising supplemental jurisdiction over Plaintiff's CFEPA claims, state law applies for purposes of determining when an action is commenced." (citing *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 191) ("In applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim.")); *see also Kotec v. Japanese Educ. Institute of N.Y.*, 321 F. Supp. 2d 428, 431 (D. Conn. 2004) (recognizing that a federal court exercising supplemental jurisdiction "looks to state law, and not the federal rules, for purposes of determining when a plaintiff commences an action.").  This notion also applies when the basis for jurisdiction is diversity.  *See Katsaros v. Serafino*, No. 3:00-cv-288(PCD), 2001 WL 789322, at *3 (D. Conn. Feb. 28, 2001) (finding that state law claims are barred by state statutes of limitations not federal law when the claim is brought either under diversity jurisdiction or supplemental jurisdiction); *see also* 19 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4510, n.13 (2d ed.) ("The rationale of *Walker v. Armco* applies to supplemental jurisdiction as well as diversity jurisdiction.").  Under Connecticut law, it is well settled that an action is commenced for purposes of a statute of limitations on the date of service of the complaint upon the defendant.  *Shlafer*, 837 F. Supp. 2d at 24 (citing *Kotec*, 321 F. Supp. 2d at 431).  Accordingly, regardless of the basis of jurisdiction, diversity or supplemental, the CFEPA claim is bound by the state statute of limitations and state rules for commencing actions, not the Federal Rules of Civil Procedure. Since the Plaintiff failed to timely serve the Defendant and has provided no basis

for equitable tolling of the Connecticut rules, the CFEPA claim must be DISMISSED.

## IV.     Conclusion

For the foregoing reasons, Defendant's [Dkt. #11] Motion to Dismiss is GRANTED.  Counts 1 and 3 are DISMISSED.

The case shall proceed pursuant to the Court's August 27, 2013 scheduling order [Dkt. #16] as to Count 2: the Plaintiff's sole remaining claim for FMLA retaliation.  The case is referred to Magistrate Judge Smith for settlement, whose chambers the parties are directed to contact jointly at their earliest convenience to schedule a settlement conference.  The trial date is unlikely to be continued to afford additional time for settlement.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 4, 2014